**Nicholas J. Henderson, OSB No. 074027**
nhenderson@portlaw.com
**Troy G. Sexton, OSB No. 115184**
tsexton@portlaw.com
Motschenbacher & Blattner LLP
117 SW Taylor Street, Suite 300
Portland, OR 97104
(503) 417-0501

*Attorney for Plaintiff Andrea Bartelamia*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| ANDREA BARTELAMIA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>U.S. BANK NATIONAL ASSOCIATION, a Minnesota corporation, as trustee for the RMAC TRUST, SERIES 2016-CTT, and QUALITY LOAN SERVICE CORPORATION, a Washington State corporation,<br><br>Defendants. | Case No. 3:23-cv-00877<br><br>PLAINTIFF'S MEMORANDUM IN SUPPORT OF A PRELIMINARY INJUNCTION<br><br>ORAL ARGUMENT REQUESTED |

## MOTION

Pursuant to FRCP 65, Plaintiff Andrea Bartelamia ("***Plaintiff***") requests that the Court enter a preliminary injunction (the "***Order***"), continuing the previously granted Temporary Restraining Order (the "***TRO***") for the duration of the pendency of this action. The Order should enjoin Defendants U.S. Bank National Association ("***U.S. Bank***") and Defendant Quality Loan Service Corporation, ("***QLS***," and, together with U.S. Bank, the "***Defendants***") from selling, injuring, destroying, transferring, removing, concealing or otherwise disposing (together, "***Transferring***" or the "***Transfer***") the real property located at 21975 SW 65th Ave., Tualatin, Oregon (the "***Property***") in any form, including by means of a foreclosure sale. The Court has set

oral argument on this matter on June 26th, 2023 at 10:00 AM. Plaintiff estimates that the time required for oral argument will be one hour. Official court reporting services are requested.

In support of the request for entry of a preliminary injunction, Plaintiff relies on the Declaration of Andrea Bartelamia [ECF 4] (the "**Bartelamia Decl.**"). Plaintiff also relies on the Supplemental Declaration of Andrea Bartelamia (the "**Supp Decl.**") and the Declaration of Nicholas J. Henderson (the "**Henderson Decl.**") filed with this Memorandum.

## **BACKGROUND**

Plaintiff has lived her entire life at the Property, and now holds legal title to it. Supp. Decl. ¶¶ 3-5, 8. The Property is encumbered by a Deed of Trust dated December 29, 2004, by Adelheid Lee, also known as Heidi Lee ("**Grantor**"), as Grantor, Transnation Title Insurance Company, as Trustee, and GreenPoint Mortgage Funding, Inc. ("**GreenPoint**"), as Beneficiary, recorded in Washington County on January 5, 2005, as Recording No. 2005-001260 (the "**Deed of Trust**"). Complaint ¶ 2; Supp. Decl. ¶ 6.

The beneficial interest of the Deed of Trust has been assigned from GreenPoint to U.S. Bank. QLS has been appointed as successor trustee. Complaint ¶¶ 3, 4; Supp. Decl. ¶ 6. The Deed of Trust was given by the Grantor to secure a loan in the amount of $320,000 (the "**Loan**"). Complaint ¶ 5; Supp. Decl. ¶ 6.

The Grantor stopped making payments on the Loan and defaulted on June 1, 2008. Complaint ¶¶ 8, 18; Supp. Decl. ¶ 8. Because of that default, Defendants' predecessors-in-interest accelerated the Loan before the Grantor's filing of bankruptcy on October 8, 2008. Complaint ¶¶ 7, 8, and 21; Bartelamia Decl. ¶ 10.

For the last fourteen years, Defendants and their predecessors in interest have been threatening foreclosure, commencing and then cancelling nonjudicial foreclosure sales, initiating and then dismissing judicial foreclosures, and generally threatening to take back the Property through some sort of foreclosure mechanism. Complaint ¶¶ 10-17; Supp. Decl. ¶ 9.

In early 2023, Defendants announced their latest foreclosure effort: a non-judicial sale

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 200
Portland, Oregon 97204-3010
Telephone (503) 417-0500 • Fax (503) 417-0501

1   following the recording a Notice of Sale and Election to Sell in the Washington County real

2   property records, as Recording No. 2023-004429. Complaint ¶ 18; Supp. Decl. ¶ 12. On June 6,

3   2023, the Plaintiff filed her Complaint in State Court requesting declaratory relief to protect her

4   possessory rights in the Property. She specifically asked the Court to find that the Deed of Trust

5   has been satisfied and discharged under the statute of limitations, ORS 88.110. Complaint ¶¶ 22-

6   23; Bartelamia Decl. ¶ 12. The Plaintiff's claims in Complaint are straightforward: the

7   Defendants have had nearly fifteen years to act on their rights, but the time to do so has now

8   passed, and they can no longer seek to take the Property back.

9       After the Complaint was filed in state court, Plaintiff prepared a motion for a temporary

10  restraining order to stop the immediate sale of the property, and seeking an injunction preventing

11  the sale from occurring during the pendency of the litigation. Henderson Decl. at ¶ 3. After

12  Plaintiff's counsel informed Defendant's counsel of their intent to move for a temporary

13  restraining order, Defendants removed the case to this court, necessitating a temporary

14  restraining order in this Court on an emergency basis. *Id.* at ¶ 4.

15                                  **LEGAL STANDARD**

16      The primary function of a preliminary injunction "is to preserve the status quo pending a

17  final determination of the rights of the parties.", in order "to preserve the power to render a

18  meaningful decision on the merits," *Resolution Tr. Corp. v. Cruce*, 972 F2d 1195, 1198 (10th Cir

19  1992) (citations omitted). Evaluating the merits of a preliminary injunction "is often a delicate

20  and difficult balancing act, with complex factual scenarios teed up on an expedited basis, and

21  supported only by limited discovery." *All. for the Wild Rockies v. Cottrell*, 632 F3d 1127, 1139

22  (9th Cir 2011) (Mosman J., concurring)

23      In determining whether to grant injunctive relief prior to trial, the Court must consider

24  four factors: (1) the movant's likelihood of success in the underlying dispute between the parties;

25  (2) whether the movant will suffer irreparable injury if the injunction is not issued; (3) the injury

26  to the non-moving party if the injunction is issued; and (4) the public interest. *Winter v. Natural*

Page 3 – PLAINTIFF'S MEMORANDUM IN SUPPORT OF A PRELIMINARY INJUNCTION
{00607156:4}

1   *Res. Def. Council, Inc.*, 129 S.Ct. 365, 374 (2008).

2      The Ninth Circuit, as well as others, have historically evaluated the four preliminary

3   injunction factors on a sliding scale, finding that a strong showing on one of the four elements

4   can compensate for a weaker showing on other elements. *All. for the Wild Rockies* at 1131. The

5   Supreme Court in *Winter* eliminated that historical flexibility as to irreparable injury, but left it

6   unchanged as to the likelihood of success. *Id.* at 1131–32. There are good reasons to take a firm

7   line with likelihood of irreparable harm and a more flexible line with likelihood of success. "[I]t

8   is not unusual for the parties to be in rough agreement about what will follow a denial of

9   injunctive relief." *Id.* at 1139 (Mosman J., concurring). Because the matter proceeds on an

10  expedited schedule without the benefit of discovery, as it does in this case, "[t]he parties are

11  often mostly guessing about important factual points that go, for example, to whether a statute

12  has been violated, whether a noncompetition agreement is even valid, or whether a patent is

13  enforceable." *Id.* Likelihood of success is less clear early in the case, without the benefit of

14  discovery and comprehensive briefing, while the irreparability of the harm should be much more

15  apparent.

16      The test in the Ninth Circuit is now firmly established post-*Winter*: where there are

17  "serious questions going to the merits" and a balance of hardships that tips sharply toward the

18  plaintiff, a preliminary injunction is appropriate, so long as the plaintiff also shows that there is a

19  likelihood of irreparable injury and that the injunction is in the public interest. *Id.* at 1135.

20      As discussed below, the Plaintiff's evidence demonstrates that all four factors weigh

21  heavily in Plaintiff's favor. Even if there was some doubt as to the Plaintiff's likelihood of

22  success on the merits, at this stage, there are serious questions going to the merits which support

23  the entry of the Order.

24      ////

25      ////

26      ////

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 200
Portland, Oregon 97204-3010
Telephone (503) 417-0500 • Fax (503) 417-0501

## ARGUMENT

### 1.    Plaintiff will suffer irreparable injury without a preliminary injunction.

Like in *Alliance for the Wild Rockies*, irreparable injury is not reasonably in dispute here. ("In this case, for example, the parties agree that more than 1,600 acres would be logged in the absence of an injunction. While they disagree about the implications of the logging—such as the extent of environmental impact or the value of natural recovery—the mere fact of logging is undisputed.") 632 F3d 1127, 1139. Without the Order, the Plaintiff will be permanently and irreparably dispossessed of the Property through foreclosure. Any subsequent decision from this Court declaring the Deed of Trust satisfied and discharged as alleged in the Complaint would be of no practical value because the Property will have been lost. Under these circumstances, issuance of the Order is essential to preserve the status quo and prevent Defendants from taking actions that violate Plaintiff's rights and render ineffectual the relief sought by Plaintiff.

### 2.    The balance of equities and public interest favor Plaintiff.

The court considers the balance of the equities and the public interest together. *D.W. v. Fresenius Medical Care North America*, 534 F.Supp.3d 1274, 1288 (D. Or 2021). In weighing the equities, a court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id*. (citing *Winter*, 555 U.S. at 24). The court must also consider "whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Id*.

Here, the balance of equites and public interest each favor Plaintiff, because Plaintiff is the only party which stands to suffer harm as a result of the foreclosure sale and the public is not injured by the grant of preliminary relief. Plaintiff stands to be dispossessed of her property from denial of the Order, while harm to Defendants is *de minimis* at best. Defendants have waited 14 years to seriously attempt to enforce its rights under the Deed of Trust, adding unnecessary interest and legal expense to the balance of the loan Defendants now seek to enforce. Waiting for the outcome of this litigation to determine the parties' rights does not materially add to the time

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 200
Portland, Oregon 97204-3010
Telephone (503) 417-0500 • Fax (503) 417-0501

that Defendants have already wasted through inaction. The potential harm to Plaintiff is specific and direct. The potential harm to Defendants is ambiguous and speculative. When the outcome is probable harm versus speculative harm, the balance of equities favors the party that would suffer probably harm. *See id.* at 1288 (finding the balance of equities favors those who will suffer probable injury over those who will suffer speculative harm.)

### 3.    Serious questions go to the merits of Plaintiff's claim.

Plaintiff seeks to have the Deed of Trust satisfied and discharged pursuant to Oregon law. Complaint ¶¶ 22-23. Prior to October 8, 2008, Defendants' elected to accelerate the Loan pursuant to applicable clauses in the controlling agreements. Complaint ¶¶ 7, 8, and 21; Bartelamia Decl. ¶ 10. The Notice of Default and Election to Sell filed by the Defendant ins the Washington County Records on September 23, 2010 codified the acceleration of the loan. Bartelamia Decl. Ex. 1 at 2 ("By reason of said default, the beneficiary has declared all sums owing on the obligation secured by said Trust Deed immediately due and payable…."). The Grantor then filed bankruptcy on October 28, 2008 and received her discharge on February 2, 2009. *See In re Adelheid Maria Scott* Case 08-35797-rld7 (Bankr. Or.).[1]

ORS 88.110 states that: ". . . no mortgage upon real property shall be a lien upon such property after the expiration of 10 years from the later of the date of maturity of the mortgage debt, the expiration of the term of the mortgage debt or the date to which the payment thereof has been extended by agreement of record; and after such 10 years the mortgage shall be conclusively presumed paid and discharged, and no suit shall be maintainable for its foreclosure." The statute explicitly states that a lien on real property expires 10 years after the later of (1) "the date of maturity of the mortgage debt", (2) "the expiration of the term of the mortgage debt" or (3) "the date to which the payment thereof has been extended by agreement of record". After the 10 year period, "the mortgage shall be conclusively presumed paid and discharged, and no suit shall be maintainable for its foreclosure."

---

[1] Plaintiff requests that the Court take judicial notice of this fact, which should not be in dispute.

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 200
Portland, Oregon 97204-3010
Telephone (503) 417-0500 • Fax (503) 417-0501

1        Item (3), dealing with agreements of record, is not relevant here as there is no agreement

2  of record in existence or alleged. There cannot be any reasonable dispute as to the meaning of (1)

3  and (2), "the date of maturity of the mortgage debt" and "the expiration of the term of the

4  mortgage debt".

5        The acceleration of the debt, documented in the Defendant's Notice of Default and

6  Election to Sell , starts the 10 year statute of limitations for the purposes of (1). The rule in

7  Oregon is that "[w]here the debt is payable in installments and the instrument contains an

8  automatic acceleration clause, the debt is fully matured and the statute of limitations begins

9  running when the debtor first defaults. [W]here an instrument gives the creditor an election to

10  accelerate maturity of the debt and it is accelerated, the statute of limitations begins to run from

11  the time of the election to accelerate." *Fed. Recovery of WA, Inc. v. Wingfield*, 162 Or. App. 150,

12  156–57 (1999) (Citing 54 C.J.S. 201, Limitations of Actions, § 153 (1987), later renumbered to

13  54 C.J.S. 201). The Note and Trust Deed gave the Defendants' the option to accelerate the debt.

14  They exercised that option on September 23, 2010, by recording the Notice of Default and

15  Election to Sell. *See* Bartelamia Decl., ¶ 11; Ex. 1. Therefor the 10-year statute of limitations

16  expired on September 22, 2020.

17        This is not a novel rule; it is widely accepted in a majority of state and federal courts. *See*

18  *U.S. Bank National Association v. Bernice 380 Corp*., 186 A.D.3d 1750, 130 N.Y.S.3d 515 (2d

19  Dep't 2020) ("Even if a mortgage is payable in installments, once a mortgage debt is accelerated,

20  the entire amount is due and the statute of limitations begins to run on the entire debt."); See also

21  *First Commerce, LLC, v. Sheck Gaming, Inc*., 2017 WL 3013252, 3 (2017) ("When a contract

22  requires installment payments, the statute begins to run when each installment is due, unless the

23  lender has and exercises its ability under an acceleration clause to render all payments due at

24  once."); See also *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of

25  California*, 522 U.S. 192, 209 n.5 (1997) (". . . consistent authority across jurisdictions indicates

26  that, when an acceleration clause is included in a contract and is exercised, the statute of

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 200
Portland, Oregon 97204-3010
Telephone (503) 417-0500 • Fax (503) 417-0501

1    limitations does not begin to run until the obligee (i.e., the borrower) defaults on the debt and the

2    obligor (i.e., the lender) exercises the acceleration option. Indeed, the Supreme Court has

3    explained the general rule that '[t]he statute of limitations on an accelerated debt runs from the

4    date the creditor exercises its acceleration option . . .”); See also *United States v. Rollinson*, 629

5    F. Supp. 581, 584 (D.D.C. 1986), aff'd on other grounds, 866 F.2d 1463 (D.C. Cir. 1989); See

6    also *Greene v. Bursey*, 733 So.2d 1111, 1114-15 (Fla. Dist. Ct. App. 1999) (“Where the

7    installment contract contains an optional acceleration clause, the statute of limitations may

8    commence running earlier on payments not yet due if the holder exercises his right to accelerate

9    the total debt because of a default. In other words, the entire debt does not become due on the

10   mere default of payment; rather, it become[s] due when the creditor takes affirmative action to

11   alert the debtor that he has exercised his option to accelerate.”); See also *Dove v. Educap*, 2016

12   WL 3951059, 4 (2016); See also *In re Bennett Funding Grp., Inc*., 2003 WL 174328, at 10; See

13   also *Windward Bora LLC v. Browne*, 2023 WL 2744684, 9 (2023); See also *U.S. Bank Tr., N.A.

14   v. Adhami*, No. 18-CV-530(PKC)(AKT), 2019 WL 486086, at 4 (E.D.N.Y. Feb. 6, 2019) (Citing

15   *Zucker v. HSBC Bank, USA*, No. 17-CV-2192(DRH)(SIL)); See also *Miss Jones LLC v. Stiles*,

16   2019 WL 1244945, 5 (2019).

17        Defendants claims that they rescinded the 2010 Notice of Default in 2019, thereby un-

18   accelerating the debt that occurred pursuant to the Notice of Default. Defendants' Opposition at

19   8. But a simple reading of the Rescission of Notice of Default shows that it explicitly *did not* do

20   anything other than rescind the right to sell the property pursuant to the Notice of Default. It

21   specified that the trustee “does hereby rescind, cancel, and withdraw said Notice of Default and

22   Election to Sell.” Cramer Decl., Ex. 2. However it went on to further specify that it “is and shall

23   be deemed to be only an election without prejudice, not to cause a sale to be made pursuant to

24   said notice so recorded.” If the Rescission of Notice of Default is only an election without

25   prejudice not to cause a sale to be made pursuant Notice of Default, it does nothing to rescind the

26   acceleration of the debt that the Notice of Default also accomplished, and the 10-year statute of

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 200
Portland, Oregon 97204-3010
Telephone (503) 417-0500 • Fax (503) 417-0501

1    limitations as to (1) in ORS 88.110 expired on September 22, 2020.

2          As to (2), "the expiration of the term of the mortgage debt", that date was either February

3    2, 2009, the Date that the grantor received her discharge in bankruptcy, or September 22, 2010

4    the date that the debt was accelerated. Defendant's Opposition treats the statutory language here

5    with a gentle hand waive; there is no serious engagement with the language and Defendants

6    seem to assert that the statutory language, "the expiration of the term of the mortgage debt"

7    means the same as "the maturity date of the Deed of Trust". Defendants Opposition at 7. As the

8    Defendants rightfully point out, the debt and the Trust Deed creating the lien and securing the

9    debt are separate concepts with separate functions, and bankruptcy alters some of these

10   functions. *Id.* But the Trust Deed *is not* the "mortgage debt" as used in ORS 88.110. The trust

11   deed is an interest in real property that secures the right to repayment. *Bayview Loan Servicing,*

12   *LLC v. Reed,* 282 Or App 525, 528–29, (2016). The debt is the money that is to be repaid.

13         While the initial term of the "mortgage debt" was specified in the trust deed to expire on

14   January 1, 2035, the term is not static. As used in ORS 88.110 the word "term" relating to the

15   "mortgage debt" can only logically refer to the period of time that the debt is to be paid.[2] The

16   term can be changed to a different date by the Defendants by acceleration in the case of default,

17   or it can be changed by the grantor to the discharge date of their bankruptcy, ending the term of

18   their personal liability on the debt.

19         The Defendants' claim that "term of the mortgage debt" won't expire until 2035 is

20   disingenuous. The "debt" hasn't been collectable since 2010, so to say that its "term" continues

21   for another 12 years is just nonsense. If the debt cannot be collected, then its "term" has to have

22   ended. The Defendants are simply incorrect to claim that they had until 2035 to foreclose their

23   trust deed. The latest date that could constitute "the expiration of the term of the mortgage debt"

24   is September 22, 2010, the Grantor's discharge date . Ten years later is September 22, 2020, the

25   latest possible date that the Trust Deed could have been foreclosed.

26
_____
[2] "Term" in this case means a "limited or definite extent of time." Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/term. Accessed June 25, 2023.

Page 9 – PLAINTIFF'S MEMORANDUM IN SUPPORT OF A PRELIMINARY INJUNCTION

**MOTSCHENBACHER & BLATTNER LLP**
117 SW Taylor Street, Suite 200
Portland, Oregon 97204-3010
Telephone (503) 417-0500 • Fax (503) 417-0501

**CONCLUSION**

The Plaintiff will suffer irreparable harm from the foreclosure of her property. There is no public harm from an injunction, and the balance of equities tips sharply in the Plaintiff's favor because the Defendants have delayed for 14 years. Serious questions go to the merits because under any reasonable reading of ORS 88.110 and the record, Defendants have lost the ability to foreclose their Trust Deed because more than 10 years has passed since the debt has matured and its term has expired.

Without an order for injunctive relief, Plaintiff's attempt to protect her rights in the Property will be moot. Plaintiff respectfully requests that this Court grant this Motion pursuant, thereby preserving the status quo and ensuring the reasonable protection of Plaintiff's possessory rights in the Property during the pendency of this action.


Dated: June 25, 2023.

MOTSCHENBACHER & BLATTNER LLP


/s/ Troy G. Sexton
Nicholas J. Henderson, OSB No. 074027
Troy G. Sexton, OSB No. 115184
(503) 417-0517 Direct
(503) 417-0501 Facsimile
nhenderson@portlaw.com
tsexton@portlaw.com
*Attorneys for Plaintiff Andrea Bartelamia*

Page 10 – PLAINTIFF'S MEMORANDUM IN SUPPORT OF A PRELIMINARY INJUNCTION

{00607156:4}

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 200
Portland, Oregon 97204-3010
Telephone (503) 417-0500 • Fax (503) 417-0501

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I served the foregoing PLAINTIFF'S MEMORANDUM IN SUPPORT OF A PRELIMINARY INJUNCTION on the attorney or party listed below on the date set forth below by the method(s) indicated:

| | |
|---|---|
| Michael J. Farrell | [ ] First-class mail, postage prepaid. |
| mfarrell@mblglaw.com | [ ] Facsimile. |
| David W. Cramer | [ ] Hand-delivery. |
| dcramer@mblglaw.com | [ ] Overnight courier, delivery prepaid. |
| MB LAW GROUP, LLP | [ ] E-mail. |
| 117 SW Taylor St., Suite 200 | [ ] E-mail copy, as a courtesy only. |
| Portland, OR 97204 | [X] ECF/PACER. |
| | [ ] Other. |

McCarthy Holthus LLP
Attn.: John M. Thomas
920 SW 3rd Ave., 1st Floor
Portland, OR 97204


Dated: June 25, 2023.

MOTSCHENBACHER & BLATTNER LLP


/s/ Troy G. Sexton
Nicholas J. Henderson, OSB No. 074027
Troy G. Sexton, OSB No. 115184
(503) 417-0517 Direct
(503) 417-0501 Facsimile
nhenderson@portlaw.com
tsexton@portlaw.com
*Attornies for Plaintiff Andrea Bartelamia*

MOTSCHENBACHER & BLATTNER LLP
117 SW Taylor Street, Suite 200
Portland, Oregon 97204-3010
Telephone (503) 417-0500 • Fax (503) 417-0501