IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ANDREA BARTELAMIA, | Case No.: 3:23-cv-00877-AN |
| Plaintiff, | |
| v. | |
| U.S. BANK NATIONAL ASSOCIATION, as trustee for the RMAC TRUST, SERIES 2016-CTT, and QUALITY LOAN SERVICE CORPORATION, | OPINION AND ORDER |
| Defendants. | |

Plaintiff Andrea Bartelamia brings this action against defendants U.S. Bank National Association ("U.S. Bank"), as trustee for the RMAC Trust, Series 2016-CTT, and Quality Loan Service Corporation ("QLS") seeking a declaratory judgment ordering that a Deed of Trust be discharged. On June 20, 2023, this Court issued a Temporary Restraining Order ("TRO") prohibiting defendants from conducting a non-judicial foreclosure sale on the real property at issue in this case until July 3, 2023. A show cause hearing regarding whether a preliminary injunction should issue was held on June 26, 2023, and the TRO was extended by stipulation of the parties until July 19, 2023. For the reasons set forth below, the preliminary injunction is GRANTED.

## LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, the plaintiff must show that: (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the favor of the plaintiff; and (4) an injunction is in the public interest. *Id.* at 20. If there are "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff," as well as a showing that plaintiff will suffer irreparable harm and the injunction is in

the public interest, then a preliminary injunction may still issue. *All. For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

## BACKGROUND

This case involves real property located at 21975 SW 65th Avenue in Tualatin, Oregon 97062 (the "Property"). The Property is encumbered by a Deed of Trust (the "Deed") dated December 29, 2004, by and between Adelheid Lee ("Grantor"), as grantor, Transnation Title Insurance Company, as trustee, and Greenpoint Mortgage Fundng, Inc. ("Greenpoint"), as beneficiary. The Deed was recorded on January 5, 2005 and was given to Grantor to secure a loan in the amount of $320,000 (the "Loan").

On October 8, 2008, Grantor filed a voluntary petition to commence a Chapter 7 Bankruptcy Case in the U.S. Bankruptcy Court for the District of Oregon. Prior to filing for bankruptcy, Grantor had ceased making payments on the Deed. The beneficiary of the Deed at that time, Greenpoint, had provided Grantor with a notice of default and election to accelerate the loan prior to Grantor's bankruptcy filing. Grantor filed a Statement of Intention on October 28, 2008, indicating that she intended to surrender her interest in the Property to the Deed's holders. On December 20, 2008, GreenPoint filed a Motion for Relief from the Automatic Stay, indicating that Grantor failed to make monthly payments as of March of 2008. The motion was granted by the bankruptcy court on January 8, 2009.

On September 23, 2010, a Notice of Default and Election to Sell ("2010 Notice") was recorded, confirming that the holder of the Deed had previously accelerated the debt. The 2010 Notice scheduled a foreclosure sale for January 27, 2011; however, that sale never took place.

On January 27, 2017, Capital One National Association ("Capital One"), as beneficiary under the Deed, commenced a judicial foreclosure action for the Property. Capital One alleged that Grantor had failed to make payments on the Loan since at least June 1, 2008, and that the Deed had been in default since that time. On October 6, 2017, Capital One filed a stipulation to dismiss the foreclosure action, and general judgment dismissing the action was entered on October 9, 2021. The Loan and the

beneficial interest under the Deed of Trust was then assigned to defendant U.S. Bank and defendant QLS was appointed as successor trustee on December 2, 2019.

On December 13, 2019, QLS recorded a Rescission of the 2010 Notice of Default ("2019 Rescission"). On December 17, 2019, QLS recorded a Notice of Default and Election to Sell ("2019 Notice") that asserted that Grantor had failed to make payments on the Loan since May 1, 2008. The 2019 Notice indicated that the original foreclosure sale was scheduled for April 22, 2020. This foreclosure did not occur.

On February 2, 2021, QLS recorded an affidavit of Mailing of Amended Trustee's Notice of Sale, which included a copy of the Amended Trustee's Notice of Sale setting a foreclosure sale date for April 23, 2021. This foreclosure sale did not occur.

In March of 2021, plaintiff acquired her interest in the Property through two quitclaim deeds, one from Craig Lee (who had retained an easement in the Property), and another from Grantor. Plaintiff paid $0 in consideration for her interest in the Property. Per the quitclaim deeds, plaintiff did not assume the debts due and owing on the Property.

On February 2, 2023, QLS recorded a Trustee's Notice of Sale and Election to Sell that asserted that (a) Grantor failed to make payments on the Loan since June 1, 2008; (b) defendants had jointly made the election to sell in their respective capacities; and (c) the foreclosure sale was scheduled for June 20, 2023.

On June 6, 2023, plaintiff filed the present action in state court. Defendant U.S. Bank removed the case to this Court on June 15, 2023. Plaintiff filed an emergency Motion for Temporary Restraining Order on June 16, 2023, seeking an order prohibiting defendants from conducting the June 20, 2023 non-judicial foreclosure sale. That motion was granted on June 20, 2023, and a show cause hearing was held on June 26, 2023 regarding whether a preliminary injunction should issue.

## DISCUSSION

**A.      Likelihood of Success on the Merits**

Plaintiff bases her claim for relief on Oregon Revised Statute 88.110.  That statute states:

"No mortgage upon real property shall be a lien upon such property after the expiration of 10 years from the later of the date of maturity of the mortgage debt, the expiration of the term of the mortgage debt or the date to which the payment thereof has been extended by agreement of record; and after such 10 years the mortgage shall be conclusively presumed paid and discharged, and no suit shall be maintainable for its foreclosure.  If neither the date of maturity nor the term of the debt is disclosed by the recorded mortgage or recorded memorandum thereof, then the date of the execution of the recorded mortgage or recorded memorandum thereof shall be deemed the date of maturity and expiration of the term of the mortgage debt for purposes of this action."

Plaintiff argues that when the mortgage loan was accelerated, as acknowledged by the 2010 Notice, the statute of limitations in ORS 88.110 began to run.  Thus, in plaintiff's view, the statue of limitations ran, at the latest, in 2020, and plaintiff argues that the Deed should be discharged.

Defendants argue that the second sentence of ORS 88.110, which describes how to determine a date of maturity when no such date is included in the recording instruments, indicates that when a date of maturity *is* included in the recording documents, then that is always the date from which the statute of limitations runs.  The Deed states, "Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than January 1, 2035."  Decl. of David W. Cramer ECF [9] Ex. 1, at 2.  Thus, defendants argue that, because the Deed states that the date of maturity is in 2035, the statute of limitations does not begin to run until that date and would expire in 2045.  In defendants' view, plaintiff is unlikely to succeed on the merits of her claim because Oregon law forecloses plaintiff's argument that acceleration of the loan triggered the statute of limitations.

Essentially, the merits of plaintiff's claim rest on the interpretation of the phrase "the date of maturity of the mortgage debt."  While plaintiff argues that the date of maturity can be changed when the mortgage loan is accelerated, defendants argue that the date of maturity is always that which is stated in the recording instruments.  Oregon law has not addressed the impact of an acceleration of a mortgage debt on the statute of limitations outlined in ORS 88.110.  In *Portland Trust & Savings Bank v. Lincoln Realty Company*, 180 Or. 96, 170 P.2d 568 (1946), the Oregon Supreme Court interpreted a prior version of ORS 88.110 and specifically addressed the issue of when the date of maturity is.  Disregarding numerous transfers and negotiations between the parties that are inapplicable to the present case, in sum, the deed in

*Portland Trust* was executed on June 15, 1931, and stated that payment was to be made in 132 promissory notes, with the debt maturing on June 15, 1941. *Id.* at 130. Each promissory note had its own due date, and the defendants argued that each promissory note bore its own statute of limitations. *Id.* That is, the defendants argued that the former version of ORS 88.110 could operate to bar recovery of some of the mortgage debt, while keeping intact the promissory notes that were still within the ten-year statute of limitations.

The Oregon Supreme Court disagreed, finding that the statute was not "intended to bar the mortgage as to part of this obligation and leave it intact as to the balance. We think that our statute refers to the lien and not to the liability." *Id.* at 131. Therefore, the court held that, "in this instance, the mortgage properly recited as the date fixed for the lien the day when the last of the notes became due." *Id.* On its face, this case could suggest that the date of maturity stated in the recording instruments is always the date that the statute of limitations begins to run. However, when read closely, the Oregon Supreme Court's statement does not indicate such a narrow application. Although the court found that, in that case, the date of maturity was the date of maturity indicated in the recording documents, it also specified that the date of maturity in the recording documents was the date "when the last of the notes became due." *Id.* In *Portland Trust*, the lender did not accelerate the payments, and thus the last of the notes was never due any earlier than June 15, 1941, when the last payment was due. Conversely, in this case, there is evidence that the mortgage debt was accelerated, making the entire obligation due on the date of acceleration.

The implication that accelerating a mortgage debt could trigger the statute of limitations in ORS 88.110 is further supported by the case cited by the Oregon Supreme Court in *Portland Trust*. To support its holding stated above, the court cited to *Lawman v. Barnett*, 180 Tenn. 546, 177 S.W.2d 121 (1944), where the Tennessee Supreme Court engaged in a lengthy discussion about when the statute of limitations begins to run on a mortgage lien. The operative statute in *Lawman* was substantially similar to the Oregon statute discussed in *Portland Trust*, and the Tennessee Supreme Court ultimately held that "the limitation on the right to foreclose the mortgage lien does not begin to run until the maturity of all of the debt secured thereby, *no optional right of acceleration having been exercised by the creditor*." *Id.* at 565

5

(emphasis added). By clarifying that the right to foreclose does not begin until all the debt matures, *unless* the creditor accelerates the debt, the holding in *Lawman* likewise implies that accelerating a mortgage debt can change the date of maturity for the purposes of the statute of limitations.

In this case, the 2010 Notice states, in relevant part, "By reason of said default, the beneficiary has declared *all sums owing on the obligation secured by said Trust Deed immediately due and payable*" and that the beneficiary and current trustee "have elected and do hereby elect to foreclose said Trust Deed by advertisement and sale." Decl. of Andrea Bartelamia ECF [4] Ex. 1, at 2. Essentially, the 2010 Notice accomplished two goals in response to the default in payments: (1) it accelerated the obligation owed by the Deed of Trust; and (2) it elected to foreclose the Deed of Trust by sale of the Property. Therefore, on September 14, 2010, the debt owed under the Deed was accelerated and, if acceleration triggered the statute of limitations, ORS 88.110 would have served to prohibit foreclosure after September 14, 2020.

However, defendants argue that, even if accelerating the mortgage debt triggered the statute of limitations, the 2019 Rescission of the 2010 Notice retracted the acceleration option, thereby tolling the statute of limitations. In relevant part, the 2019 Rescission states:

> "Now therefore, notice is hereby given that the undersigned trustee does hereby rescind, cancel, and withdraw [the 2010 Notice]; it being understood, however, that this rescission shall not in any manner be construed as waiving or affecting any breach or default (past, present or future) under said trust deed or as impairing any right or remedy thereunder, or as modifying or altering in any respect of the terms, covenants, conditions or obligations thereof, but is and shall be deemed to be only an election without prejudice, not to cause a sale to be made pursuant to said notice so recorded."

Decl. of David W. Cramer ECF [9] Ex. 2, at 1. Although the 2019 Rescission states that the 2010 Notice is rescinded, cancelled and withdrawn, the 2019 Rescission specifically notes that it elected *only* to not cause a sale to be made pursuant to the default recorded in the 2010 Notice. The 2019 Rescission makes no statement regarding whether the election to accelerate the obligation owed under the Deed was rescinded, and by stating that it only elected not to cause a sale, it could be inferred that the election to accelerate the debt was *not* rescinded. Thus, it is not clear that the 2019 Rescission properly withdrew the election to accelerate the debt owed under the Deed stated in the 2010 Notice.

On balance, the Court finds that there are serious questions going to the merits of plaintiff's claims.

**B.      Irreparable Harm**

Plaintiff argues that she will suffer permanent and irreparable injury if a preliminary injunction does not issue because foreclosure of the Property would permanently dispossess her interest in the Property.  Further, plaintiff argues that if foreclosure occurs, her claim in this case would be rendered moot because discharge of the Deed would have no impact if plaintiff no longer held possession of the Property.  Thus, plaintiff argues that a preliminary injunction is necessary to preserve the status quo pending the outcome of this case.

Defendants argue that plaintiff would not suffer irreparable harm because plaintiff has not paid anything toward the loan balance, nor did she pay anything to receive her interest in the Property.  Defendants also note that plaintiff did not personally assume liability for the mortgage liens and would not be required to pay anything even in the event of foreclosure.  In defendants' view, the harm that would occur from not issuing a preliminary injunction is solely that plaintiff would have to find a new place to rent, take over the note to reinstate it, or pay off and obtain a discharge of the Deed.

The Court finds that plaintiff would suffer irreparable harm if a preliminary injunction does not issue.  Although defendants are correct that plaintiff would not lose a monetary interest in the Property through foreclosure, she would lose the opportunity to litigate the merits of her claim because a foreclosure sale would render this action moot.  Given that there are serious questions regarding the merits of plaintiff's claim, such harm to plaintiff would be severe.

**C.      Balance of Equities & Public Interest**

Plaintiff argues that the balance of equities weighs in her favor because she is the only party who will suffer harm from a foreclosure sale, and any harm to defendants would be *de minimis* because the Deed has not been enforced in fourteen years.  Thus, plaintiff argues that waiting for the outcome of this litigation would not materially add to the time that defendants have already waited.  Further, plaintiff argues that any potential harm to her is specific and direct, whereas potential harm to the defendants

is ambiguous and speculative.

Defendants argue that an injunction would harm them because defendant U.S. Bank has a Deed that has received zero payments since June 1, 2008, and it has been forced to defend multiple lawsuits brought by plaintiff to prevent defendant from foreclosing the Deed. Further, defendants note that defendant U.S. Bank has continued to pay taxes and insurance on the Property since it acquired the Deed, causing it ongoing and direct harm

The Court finds that the balance of equities tips sharply in plaintiff's favor. The potential harm that plaintiff would suffer if a preliminary injunction does not issue is permanent dispossession of the Property and an inability to litigate this case on the merits, whereas the potential harm that defendants would suffer is primarily monetary. While this Court does not seek to be dismissive of the harm that defendants would face from a preliminary injunction, defendants' potential harm can be mitigated through the security requirement of Federal Rule of Civil Procedure 65(c); plaintiff's potential harm cannot be mitigated in any meaningful way except through a preliminary injunction.

Further, the Court finds that the public interest weighs in favor of a preliminary injunction. Although defendants argue that issuing a preliminary injunction in this case will encourage lenders to foreclose on properties more quickly, and will encourage borrowers to seek litigation against lenders, the factual circumstances of this case are more limited than defendants imply. Indeed, the Oregon Supreme Court has never even discussed the precise issue in this case. Further, granting this preliminary injunction is not synonymous with a finding that foreclosure is inappropriate in this case; rather, it represents this Court's findings that there are serious questions at this stage of the case regarding whether defendants have a legal right to foreclose on the Property.

**D.    Security**

Because the Court finds that plaintiff has made a clear showing that a preliminary injunction is warranted, a preliminary injunction will issue. The sole remaining issue is determining what amount of security, if any, plaintiff will be required to pay. Federal Rule of Civil Procedure 65(c) states that a preliminary injunction may issue "only if the movant gives security in an amount the court considers

proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." This Court has discretion regarding the amount of security required, and is not obligated to impose any security if "there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (internal quotation marks omitted).

Defendant U.S. Bank requests security in an amount equal to the fair market value of the Property, estimated as $640,000. Suppl. Decl. of David W. Cramer ECF [20] Ex. 8, at 2. In the alternative, defendant U.S. Bank requests security in an amount equal to the fair market rental value, estimated as $4,350 per month. Suppl. Decl. David W. Cramer ECF [20] Ex. 8, at 1.

Plaintiff argues that no security should be required because defendants are already over-secured in the Property. That is, plaintiff argues that the only potential damage to defendants that security would protect against is the interest that would continue to accrue on the debt pending the outcome of this litigation.[1] Given that defendants seek to recover approximately $580,000 on the Deed, and the fair market value of the property, as indicated by defendants' briefing, is $640,000, plaintiff argues that the interest accrual would need to reach $60,000 before defendants would be harmed by the injunction. Plaintiff further argues that a rental value methodology is inappropriate because defendants would not be deprived of rental value by the injunction as they have presented no evidence that they would rent the property absent an injunction.

After considering the parties' arguments, plaintiff is directed to post a $1,850 bond with the Clerk of the Court on the 19th day of every month until this injunction is dissolved.[2] The Court acknowledges that the fair market value of the home is greater than the amount owed under the Deed. However, the goal of a preliminary injunction is to preserve the status quo, and the purpose of security is paying the costs and damages sustained by defendants if they are found to have been wrongfully enjoined. Monthly payments of $1,850 will serve to preserve the current amount owed under the Deed, while also

---

[1] Plaintiff estimates that interest will accrue at $60.85 per day.
[2] This amount was calculated by determining the annual accrual of interest, $318,272.39 (the original loan amount) x 7%, which equals $22,209.06. That amount was then divided by twelve to estimate monthly payments ($22,209.06 / 12 = $1,850.83).

mitigating the financial harm that defendants will incur from the issuance of this injunction.

## CONCLUSION

Accordingly, defendants U.S. Bank National Association and Quality Loan Service Corporation, and those acting on their behalf, are enjoined from either directly or indirectly taking any actions to advance or conduct a non-judicial sale of the real property located at 21975 SW 65th Avenue, Tualatin, Oregon 97062 pending the outcome of this case. Plaintiff Bartelamia is directed to pay security by posting a $1,850 bond with the Clerk of the Court by the 19th of every month until this injunction is dissolved.

IT IS SO ORDERED.

DATED this 19th day of July, 2023.

Adrienne Nelson
United States District Judge