IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ANDREA BARTELAMIA,<br><br>      Plaintiff,<br>v.<br><br>U.S. BANK NATIONAL ASSOCIATION, as trustee for the RMAC TRUST, SERIES 2016-CTT, and QUALITY LOAN SERVICE CORPORATION,<br><br>      Defendants. | Case No.: 3:23-cv-00877-AN<br><br>OPINION AND ORDER |

      Plaintiff Andrea Bartelamia brings this action against defendants U.S. Bank National Association ("U.S. Bank"), as trustee for the RMAC Trust, Series 2016-CTT, and Quality Loan Service Corporation ("QLS") seeking a declaratory judgment ordering that a Deed of Trust be discharged. On April 19, 2024, plaintiff and U.S. Bank filed cross-motions for summary judgment. QLS joined in U.S. Bank's motion.[1] Oral argument was held on July 30, 2024. For the reasons set forth below, plaintiff's motion is DENIED, and defendants' motions for summary judgment are GRANTED.

## LEGAL STANDARD

      Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party. *See Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991). When cross-motions for summary judgment are filed, each party's evidence is considered, "regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."

---

[1] References and conclusions as to U.S. Bank's motion apply with equal force to QLS's motion.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The substantive law determines which facts are material. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party has the initial burden of informing the court of the basis for its motion and identifying the portions of the pleadings and the record that it believes demonstrate the absence of an issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. *Id.* at 325. Instead, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. *Id.*; *see In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). If the moving party sustains its burden, the non-moving party must then show that there is a genuine issue of material fact that must be resolved at trial. *Celotex*, 477 U.S. at 324.

## BACKGROUND

### A.    Stipulated Facts and Evidence

This case involves real property located at 21975 SW 65th Ave. in Tualatin, Oregon (the "Property"). Stipulation to Facts & Admissibility & Authenticity of Docs. ("Stipulation"), ECF [57], at 2. The Property is encumbered by a Deed of Trust dated December 29, 2004 by Adelheid Lee (Heidi Lee) ("Lee") as Grantor, Transnational Title Insurance Company as Trustee, and GreenPoint Mortgage Funding, Inc. as Beneficiary. *Id.* at 4, Ex. 18. The Deed of Trust was recorded in Washington County on January 5, 2005, Recording No. 2005-001260. *Id.*

The beneficial interest of the Deed of Trust has been assigned from GreenPoint to U.S. Bank, and QLS has been appointed successor trustee. *Id.* at 4. The Deed of Trust was given by Lee to secure obligations under the Adjustable Rate Note entered into between Lee and Greenpoint on December 29, 2004 (the "Note"), which memorialized a loan to Lee in the amount of $320,000 (the "Loan"). *Id.* Lee

has not made a payment on the Loan since June 1, 2008. *Id.*

On October 28, 2008, Lee filed for chapter 7 bankruptcy in Case No. 08-35797-rld7. *Id.* at 5. Lee received an order of discharge on February 2, 2009. *Id.* Lee is not personally liable for the debt as a result of her bankruptcy discharge order. Def. U.S. Bank's Mot. For Summ. J. ("U.S. Bank.'s Mot."), ECF [44], at 7 n.5.

On September 23, 2010, GreenPoint and Fidelity National Title Insurance Company (the then-successor trustee) recorded a Notice of Default and Election to Sell in Washington County, Recording No. 2010-074719 (the "2010 Notice") accelerating the entire debt under the Note and instituting foreclosure measures. Stipulation, Ex. 19. Sale of the Property was to occur on January 27, 2011, but no sale was made. *Id.*, Ex. 19, at 2; U.S. Bank's Mot. 7.

On March 11, 2017, Lee signed an RMLS Oregon Listing Contract form with real estate agent Dan Scott ("Scott") to list the Property for a short sale. Stipulation, Ex. 1. Paragraph 15 of that agreement states that the listing is "subject to 3rd party lender approving sale." *Id.*, Ex. 1, at 2. On March 27, 2017, Scott, on behalf of Lee, faxed a request to Capital One, U.S. Bank's predecessor in interest, to conduct a short sale of the Property. *Id.*, Ex. 2. That request included a Borrower Assistance form identifying Scott as Lee's agent and was signed and dated by Lee. *Id.*, Ex. 2, at 3, 4. In the form, Lee identified her loan number with Capital One and confirmed that the Property was listed for sale, but she had not received any offers at that time. *Id.*, Ex. 2, at 2-3. The fax also included a document entitled "Intent to Sell or Vacate Property" signed and dated by Lee on March 18, 2017, identifying her loan by the loan number and acknowledging that Capital One had advised her of other options that may have provided a more affordable payment to allow her to keep the Property. *Id.*, Ex. 2, at 5.

On April 5, 2017, Lee's former attorney sent a signed letter to Capital One requesting a payoff statement. *Id.*, Ex. 4. The letter identified the loan by the Property address and Lee's name and stated that Capital One must "provide an accurate statement of the total outstanding balance that would be required to pay [Lee's] obligation in full as of a specified date." *Id.* Capital One provided the payoff quote of $466,444.19 on April 13, 2017. *Id.*, Ex. 5.

On April 12, 2017, Scott again faxed Capital One about a short sale listing of the Property. *Id.*, Ex. 6. The fax identified the loan by the loan number, Lee's name, and the Property Address. *Id.*, Ex. 6, at 1. The letter stated that "the property had been on the market for $489,900 since 3.27.2017," but that Lee had not received any offers and there was thus "no HUD to send for [ ] review." *Id.* Further, the letter stated that the plan was "to reduce the listing price to $399,900." *Id.*

Between July 2017 and December 2017, at least five offers were made for the Property. *Id.*, Ex. 12, at 3, Ex. 13, at 1-4. Capital One rejected all the offers because they were below market value. *Id.*, Ex. 12, at 3.

On December 13, 2019, defendants recorded a Rescission of Notice of Default in Washington County, Recording No. 2019-090670 (the "2019 Rescission"). *Id.*, Ex. 20. On December 17, 2019, QLS commenced a nonjudicial foreclosure by recording a Trustee's Notice of Sale in Washington County, Recording No. 2019-091604. *Id.*, Ex. 21. The nonjudicial foreclosure sale was scheduled for April 22, 2020, but no sale occurred. *Id.*, Ex. 21, at 2.

On February 3, 2021, Lee sent an email to "payoff.reinstatement@mccarthyholthus.com," identifying the Property by address and tax lot number and her mortgage loan by her loan number. *Id.*, Ex. 17. In the email, Lee stated, "I am looking for both the pay off quote as well as the reinstatement figure on the property." *Id.*

On March 4, 2021, three quitclaim deeds for the Property were issued and recorded in Washington County, Recording Nos. 2004-115881, 2021-029539, and 2021-029540. Decl. of David W. Cramer, ECF [9], Ex. 3. These deeds were from plaintiff's parents and released "all right, title, and interest in and to" the Property to plaintiff in exchange for "$0.00." *Id.*, Ex. 3, at 2, 4. Lee's quitclaim deed stated, "the property is subject to liens in excess of $550,000. Grantee has not agreed to personally assume any liability for such liens." *Id.*, Ex. 3, at 4.

On April 8, 2021, plaintiff filed a lawsuit against U.S. Bank in Washington County Circuit Court ("2021 State Action"), Case No. 21CV13887, seeking a declaration that foreclosure under the Deed of Trust was time-barred. *Id.*, Ex. 5, at 7-8. On November 15, 2022, the case was dismissed without

prejudice. *Id.*, Ex. 6, at 3.

On February 2, 2023, defendants commenced a new nonjudicial foreclosure pursuant to a Notice of Default and Election to Sell recorded in Washington County, Recording No. 2023-004429. *Id.*, Ex. 23. Sale of the Property was to occur on June 20, 2023. *Id.* On June 6, 2023, plaintiff filed the present suit in Washington County Circuit Court seeking a judgment declaring the Deed of Trust to be discharged and extinguished. Notice of Removal, ECF [1], Ex. 1, ¶ 23. Defendants removed the case to this Court on June 15, 2023. *Id.* On June 20, 2023, this Court issued a temporary restraining order enjoining defendants from conducting a nonjudicial foreclosure sale of the Property. Op. & Order, ECF [5]. On July 19, 2023, this Court issued a preliminary injunction enjoining defendants from conducting a nonjudicial foreclosure sale of the Property during the pendency of this case. Op. & Order, ECF [22].

**B.      Defendants' Additional Evidence**

Plaintiff does not dispute the authenticity or legitimacy of defendants' additional proffered evidence. On December 20, 2011, Capital One sent Lee a letter (the "2011 Letter") stating that her loan was in default because one or more payments were past due. Decl. of Alan Blunt ("Blunt Decl."), ECF [48], Ex. 1. The letter stated that Capital One must receive a payment of $59,747.80 on or before January 19, 2012, and that payment of that sum would cure Lee's default and reinstate the loan. *Id.*, Ex. 1, at 1. The letter further stated that failure to cure the default on or before January 19, 2012, "shall result in the acceleration (immediately becoming due and payable in full) of the entire loan balance." *Id.* That letter identified the principal balance on the loan as $318,272.39 but did not request payment of that amount to cure the default and reinstate the loan. *Id.*

On December 22, 2011, Capital One sent Lee a billing statement identifying the past due amount for June 1, 2008 through December 22, 2011, as $57,682.48. *Id.*, Ex. 2, at 1. The billing statement set forth the principal balance as $318,272.39, and the loan maturity date as January 2035. *Id.*

From January 16, 2014 through June 16, 2015, Capital One sent Lee a billing statement each month identifying the past due amount from June 1, 2008 through the applicable month. *Id.*, Exs. 3-20. Each statement set forth the principal balance as $318,272.39 and the loan maturity date as January

2035. *Id.* Each statement, aside from one dated March 17, 2014, also stated:

> "Your loan has been accelerated. This statement is for informational purposes only and does not reflect the accelerated amount due. Payment of the amounts shown on this statement may not cure the default and/or reinstate your loan. This statement is provided without waiver of Capital One's rights under the security instrument and if applicable, the right to proceed with any authorized legal action."

*Id.*, Exs. 3-4, 6-20.

On September 3, 2015, Capital One sent Lee a letter (the "2015 Letter") stating that her loan was in default due to past due payments. *Id.*, Ex. 21, at 1. That letter further stated that Capital One must receive payment of $126,139.07 on or before October 8, 2015, to cure the default on the loan, and failure to cure the default on or before October 8, 2015 "shall result in the acceleration of the entire sum secured by the deed of trust and institution of foreclosure proceedings." *Id.*

On February 7, 2018, Rushmore Loan Management Services ("Rushmore"), a successor mortgage loan servicer, sent Lee a letter offering foreclosure alternatives "designed to assist [her] in bringing about a resolution of the default of [the] loan." *Id.*, Ex. 22, at 1. On May 10, 2019, June 11, 2019, and July 11, 2019, Rushmore sent Lee a billing statement that set forth the principal balance as $318,272.39 but identified the "total payment amount" as $213,722.30, $216,192.94, and $218,611.63 respectively. *Id.*, Exs. 23-25. Each statement stated that the past due amount was the "unpaid amount that, if paid, would bring your loan current as of the date of this statement." *See, e.g.*, *id.*, Ex. 23, at 3. They also stated, "The [past due] amount listed here may not be the full amount necessary to bring your account current." *See, e.g.*, *id.*, Ex. 23, at 1. Each statement identified the loan as "in Foreclosure," with the date of the "First Notice of Filing" listed as January 27, 2017.[2] *See, e.g.*, *id.*, Ex. 23, at 3.

---

[2] The complaint alleges that, on January 27, 2017, Capital One initiated a judicial foreclosure action in Washington County Circuit Court, Case No. 17CV03600. Notice of Removal, Ex. 1, ¶ 13. Capital One stipulated to dismissal of the action on October 6, 2017. *Id.*, Ex. 1, ¶ 14.

6

# DISCUSSION

A. **Plaintiff's Motion for Summary Judgment**

Resolution of this case turns on whether U.S. Bank's ability to foreclose on the Property is precluded by the statute of limitations set forth in Oregon Revised Statute ("ORS") § 88.110. In relevant part, that statute states:

> "Except as provided in ORS 88.120, no mortgage upon real property shall be a lien upon such property after the expiration of 10 years from the later of the date of maturity of the mortgage debt, the expiration of the term of the mortgage debt or the date to which the payment thereof has been extended by agreement of record; and after such 10 years the mortgage shall be conclusively presumed paid and discharged, and no suit shall be maintainable for its foreclosure."

Neither party disputes that the 2010 Notice accelerated the debt due under the Note and that such acceleration also accelerated the date of maturity of the mortgage. Nor do the parties dispute that when the mortgage debt was accelerated, the statute of limitations under ORS § 88.110 began to run. The primary question for both motions for summary judgment is whether that acceleration was ever properly rescinded, thus resetting the statute of limitations.

Under Oregon law, a lender may rescind invocation of an acceleration clause, provided that the debtor has not "changed its position or acted to its prejudice" after notice of acceleration, but prior to the rescission. *W. Portland Dev. Co. v. Ward Cook, Inc.*, 246 Or. 67, 71, 424 P.2d 212 (1967). Although Oregon law provides little guidance for what constitutes a proper rescission of acceleration, to invoke the option to accelerate, "a promisee must perform some affirmative act evidencing his intention to exercise his option to accelerate[;] no formal notice of election is required." *Salishan Hills, Inc. v. Krieger*, 62 Or. App. 84, 90-91, 660 P.2d 160 (1983). Thus, it stands to reason that, similarly, some affirmative act must evidence an intent to rescind the option to accelerate.

Plaintiff argues that the acceleration was not properly rescinded by the 2019 Rescission, but defendants argue that, regardless of the 2019 Rescission, the option to accelerate was rescinded at numerous points between 2011 to 2019. As evidence, defendants point to the 2011 Letter, the 2015 Letter, and the bank statements from Capital One and Rushmore. Defendants argue that, like the evidence assessed

7

in *Gosha v. Bank of New York Mellon*, No. 3:24-cv-00251-AN, 2024 WL 658897 (D. Or. Feb. 16, 2024), this is sufficient evidence that the option to accelerate the mortgage debt was rescinded.

As plaintiff points out, and defendants concede, the billing statements from January 2014 through June 2015, with the exception of the March 2014 statement, each specifically state that the loan has been accelerated. Even when construing this evidence in the light most favorable to defendants and considering that the total amount due on the statements is less than the principal balance, these statements are insufficient to establish an affirmative act evidencing an intent to rescind the option to accelerate.

However, the 2011 Letter and the 2015 Letter offer stronger support for defendants' position. The 2011 Letter performed three functions: (1) it notified Lee that her loan was in default; (2) it stated the amount that needed to be paid to cure the default, which was less than the principal balance; and (3) it stated that failure to pay that amount by January 9, 2012 "shall result in the acceleration (immediately becoming due and payable in full) of the entire sum secured by the loan security instrument." Blunt Decl., Ex. 1, at 1. In *Gosha*, this Court held that a substantially similar letter appeared to rescind a prior acceleration of a mortgage debt. The letter in *Gosha*, in relevant part, stated that "the mortgage loan remains in default and the lender intends to foreclose," and stated the "total delinquency and reinstatement amount," which was less than the total principal amount due under the loan. 2024 WL 658897, at *4.

Plaintiff argues that *Gosha* is factually distinguishable because the plaintiffs in that case had presented only a Notice of *Intent* to Accelerate, whereas plaintiff in this case provided sufficient evidence of acceleration. While true that the Court distinguished this case in its analysis of *Gosha*, those distinctions were based on the evidence presented at the preliminary injunctive relief stage. When comparing *Gosha* to the present case, at that stage, the parties presented materially different evidence that resulted in different outcomes. However, this case is now at the motion for summary judgment stage and further evidence has been put forth than was available at the preliminary injunctive relief stage, including the 2011 Letter and 2015 Letter.

Viewing the letters in the light most favorable to defendants, the 2011 Letter is sufficient evidence of an intent to rescind the 2010 Notice's election to accelerate the mortgage debt. This implication

is supported by the fact that, two days after the 2011 Letter, a billing statement was issued that, unlike the 2014-2015 billing statements, does not state that the loan has been accelerated. Blunt Decl., Ex. 2. Further, the statement identifies the total amount due only as the past due amount, $58,678.52, not the entire balance of the loan. *Id.* Taken together, defendants have proffered sufficient evidence that the 2011 Letter rescinded the option to accelerate.

However, the Court disagrees with defendants that the next acceleration of the debt did not occur until 2019. There is evidence that the debt was accelerated when no payment was made by January 9, 2012 because the 2011 Letter is clear: the loan "*shall* be accelerated" if payment is not made by January 9, 2012. The use of the word "shall," rather than the word "may," indicates a higher level of certainty that the debt would be accelerated if payment was not made. Yet affirmative evidence that the loan was accelerated is not evidenced until the January 2014 billing statement. Regardless of when the next acceleration occurred, defendants have offered evidence that any such acceleration was rescinded in 2015.

Like the 2011 Letter, the 2015 Letter served three functions: (1) it notified Lee that her loan was in default; (2) it stated the amount that needed to be paid to cure the default, which was less than the principal balance; and (3) it stated that failure to pay that amount by October 8, 2015 "shall result in the acceleration of the entire sum secured by the deed of trust." *Id.*, Ex. 21, at 1. Viewing the evidence in the light most favorable to defendants, any acceleration indicated by the 2011 Letter or 2014-2015 billing statements was rescinded by the 2015 Letter, and the option to accelerate was not reinstated until the 2019 Notice. Thus, the statute of limitations under ORS § 88.110 would not expire until 2029, and summary judgment in plaintiff's favor is inappropriate.

**B.     Defendants' Motion for Summary Judgment**

　　　　1.     *Rescission of Acceleration*

Viewing the evidence in the light most favorable to plaintiff, the 2011 Letter is still sufficient evidence of an intent to rescind the 2010 Notice's acceleration of the mortgage debt. Not only is the 2011 Letter substantially similar to the letter in *Gosha* that evidenced rescission of acceleration, the December 2011 billing statement, unlike the 2014-2015 billing statements, contains no indication that the

9

loan was accelerated at that time. Indeed, plaintiff has offered no evidence to undermine the finding that the 2011 Letter rescinded the acceleration.

Again, the relevance of whether the acceleration was reinstated in 2012 or 2014 depends on the effect of the 2015 Letter. On one hand, the identical nature of the 2015 Letter and the 2011 Letter implies that the 2015 Letter also rescinded the acceleration. On the other hand, no explanation is proffered for why Capital One would send a billing statement on June 16, 2015 stating that the loan is accelerated, only to send a letter three months later indicating that the loan is not accelerated. When viewed in the light most favorable to plaintiff, this discrepancy could, in theory, undermine the effectiveness of the 2015 Letter's notice that the acceleration was rescinded.

However, the Court finds that a reasonable jury could only conclude that the 2015 Letter rescinded the acceleration. Defendants have demonstrated an absence of evidence indicating (1) that the loan remained accelerated from June 2015 to September 2015, or (2) that the loan remained accelerated in September 2015, despite the 2015 Letter. Plaintiff has not identified or offered evidence to contradict the inference that the acceleration was rescinded by the 2015 Letter. Absent evidence contradicting the 2015 Letter, the only reasonable inference is that it rescinded the acceleration because "[o]bviously an accelerated loan cannot again be accelerated." *Steinberger v. IndyMac Mortgage Servs.*, No. CV-15-00450-PHX-ROS, 2017 WL 6040003, at *13 (D. Ariz. Jan 12, 2017).

Even assuming that the loan was subsequently accelerated on October 8, 2015 after no payment was made, the statute of limitations would not run until October 8, 2025. Thus, plaintiff's claim is premature and summary judgment in defendants' favor is appropriate.

2.   *Tolling*

Alternatively, even if the 2015 Letter did not rescind the acceleration, summary judgment in defendants' favor would be appropriate. Defendants argue that they are entitled to tolling for the period of time in which the COVID-19 pandemic foreclosure moratorium prohibited foreclosure remedies, for the period of time in which plaintiff's lawsuits were active, and for the period of time in which defendants were pursuing nonjudicial foreclosure remedies.

        a.       Foreclosure Moratorium

On March 8, 2020, then-Governor Kate Brown issued Executive Order 20-03 declaring a state of emergency related to the COVID-19 pandemic. Exec. Order No. 20-03 (Mar. 8, 2020), https://www.oregon.gov/gov/eo/eo_20-03.pdf. The Oregon legislature subsequently passed House Bill ("HB") 4204, which was signed into law on June 30, 2020. The bill prohibited lenders, during the "emergency period" defined as March 8, 2020 through September 30, 2020, from "[f]oreclos[ing] a trust deed by advertisement and sale[,]" from "[b]ring[ing] an action or suit to foreclose a mortgage or trust deed or to enforce an obligation under a retail installment contract for subject property[,]" from "[e]nforc[ing] a forfeiture remedy[,]" or "[b]ring[ing] an action or suit to foreclose a lien or other security interest on, or petition for an order of foreclosure by advertisement and sale of, subject property." H.B. 4204, 80th Leg., 1st Spec. Sess. § (1)(2)(b), (1)(4) (Or. 2020). The prohibition did not apply to judgments of foreclosure and sale, writs of execution, or notices of a trustee's sale that "were issued or given before the emergency period began." *Id.* § 1(10)(a)-(b). Section 1 was repealed "90 days after the expiration of the emergency period," but Brown could extend the emergency period within thirty days of its expiration. *Id.* §§ 1(2)(b), 2. On August 31, 2020, Brown issued Executive Order 20-37 extending the foreclosure moratorium through December 31, 2020. Exec. Ord. 20-37 (Aug. 31, 2020), https://www.oregon.gov/gov/eo/eo_20-37.pdf.

HB 2009, signed into law on June 1, 2021, modified HB 4204 by amending Section 2 to state that Section 1 is repealed "on the effective date of this 2021 Act." H.B. 2009, 81st Leg., Reg. Sess. § 2 (Or. 2021). HB 2009 still prohibited lenders from pursuing foreclosure remedies and actions during the "emergency period," defined as December 31, 2020 through June 30, 2021. *Id.* § 1(2)(b), (4). Brown was again authorized to extend the emergency period to September 30, 2021 by executive order, if issued on or before June 14, 2021, and to extend the emergency period to December 31, 2021 by executive order, if issued on or before August 16, 2021. *Id.* § 1(2)(b)(A)-(B). Brown extended the emergency period until December 31, 2021. Exec. Order No. 21-14 (June 11, 2021), https://www.oregon.gov/gov/eo/eo-21-14.pdf; Exec. Order No. 21-30 (Aug. 16, 2021), https://www.oregon.gov/gov/eo/eo-21-30.pdf. In sum, there was

a foreclosure moratorium from March 8, 2020 through December 31, 2021.

Defendants argue that they are entitled to tolling for the entire 664 days[3] that the foreclosure moratorium was in effect. At oral argument, plaintiff conceded that the foreclosure moratorium operated to toll the statute of limitations. Thus, defendants are entitled to equitable tolling for the 664 days in which they were prohibited from pursuing foreclosure remedies.

b.   Plaintiff's Lawsuits

Defendants also argue that they are entitled to tolling for the period of time in which plaintiff filed lawsuits against them to prevent nonjudicial foreclosures: namely, the present suit, which was filed on June 6, 2023, and the 2021 State Action. Plaintiff offers no argument regarding the present case but argues that tolling is not warranted for the 2021 State Action because no temporary restraining order or preliminary injunction was entered in that case.

Defendants are entitled to tolling for the time in which the present case has been pending. Under ORS § 12.210, "When the commencement of an action is stayed by injunction or a statutory prohibition, the time of continuance of the injunction or prohibition shall not be a part of the time limited for the commencement of the action." *See Peters v. McKay*, 195 Or. 412, 458, 238 P.2d 225 (1951) (declining to apply tolling when "there [was] no reason to believe that the courts within the United States were closed to the plaintiffs during that period"). During the present case, defendants have been enjoined from pursuing foreclosure remedies since June 20, 2023.

However, defendants are not entitled to tolling for the period of time in which the 2021 State Action was pending. Defendants were not barred from pursuing foreclosure remedies during the pendency of that case as no preliminary injunction or temporary restraining order was issued. Although defendants argue that they risked violating the Fair Debt Collection Practices Act ("FDCPA") by pursuing foreclosure remedies during the 2021 State Action, in 2020 the Ninth Circuit held that the FDCPA does not

---

[3] Defendants state in their pleadings that this period was for 663 days. However, the 663-day calculation does not include December 31, 2021, and the foreclosure moratorium was in effect until 11:59 p.m. on December 31, 2021. Thus, this day should be included in the calculation.

apply to mortgage lenders. *Barnes v. Routh Crabtree Olsen PC*, 963 F.3d 993, 998 (9th Cir. 2020) ("[A] plaintiff must identify something beyond the mere enforcement of a security interest to establish that the defendants are acting as debt collectors subject to the FCPA's broad code of conduct."). Defendants argue only that they were prohibited from pursuing a "nonjudicial foreclosure" during the 2021 State Action, but nonjudicial foreclosures do not include deficiency judgments. In the absence of a foreclosure remedy that includes a deficiency judgment, defendants could not reasonably believe they would be considered debt collectors subject to the FDCPA when they would be pursuing only the "mere enforcement of a security interest." *Id.* Thus, defendants had no reason to avoid commencing a foreclosure action during the 2021 State Action when no injunctive measure prevented them from doing so.[4]

        c.      Nonjudicial Foreclosures

Finally, defendants argue they are entitled to tolling for the periods in which nonjudicial foreclosure remedies were being pursued. Defendants argue that because ORS § 86.764 imposes a mandatory 120-day waiting period between recording a Notice of Sale and the actual sale, this is a statutory prohibition on the sale of the property and should be subject to tolling. Defendants rely entirely on Washington law for this proposition.

Although Oregon courts may sometimes look to the laws of other jurisdictions as persuasive authority, defendants have offered no Oregon authority indicating that Oregon courts would follow this Washington rule. Washington courts have not provided a clear explanation as to why the rule was developed, aside from perhaps considerations of equitable tolling. However, Oregon has historically "sparingly used" equitable tolling, and limits its availability to "when circumstances outside the control of the affected party make it impossible to comply with a statute of limitations." *Rodriguez v. Williams*, No. 08-290-ST, 2010 WL 1542092, at *3 (D. Or. Feb. 25, 2010). Put another way, Oregon applies equitable tolling "only to those claims where patent injustice would result from the court's failure to toll the statute

---

[4] The 2021 State Action was filed in April of 2021, when the foreclosure moratorium was in effect. To be clear, defendants are still entitled to equitable tolling from April of 2021 through December 31, 2021. They are not, however, entitled to equitable tolling from January 1, 2022 (when the foreclosure moratorium ended) through November 15, 2022 (when the 2021 State Action was dismissed).

of limitations." *Coultas v. Payne*, No. 3:11-cv-00045-AC, 2016 WL 740421, at *5 (D. Or. Feb. 24, 2016).

Given Oregon's historically limited use of the doctrine of equitable tolling, the Court is not persuaded that Oregon courts would adopt Washington's rule to categorically apply equitable tolling to the waiting period between a notice of sale and the sale itself. Generally, that time period does not present circumstances that would make it impossible for a defendant to comply with the statute of limitations. On the contrary, the waiting period is imposed in the foreclosure process—when the party is presumably complying with the statute of limitations by pursuing foreclosure remedies in a timely manner. Nor would patent injustice result in the absence of tolling. Indeed, it is difficult to conceive how a prohibition on conducting a sale could impose unjust limitations on a party's ability to foreclose when that prohibition occurs during the foreclosure process. As such, defendants are not entitled to tolling for the waiting period between the notice of sale and the attempted sale for their attempted nonjudicial foreclosures.

In sum, defendants are entitled to tolling only for the period in which the foreclosure moratorium was in place (664 days) and the period in which defendants were enjoined from pursuing foreclosure remedies in this case. After applying the relevant tolling periods, plaintiff's claim would still be premature even if (1) the 2011 Letter rescinded the acceleration, but reinstated it on January 9, 2012, and (2) the 2015 Letter did not rescind the acceleration. A ten-year statute of limitations is, approximately, 3,650 days (not including the extra days from leap years). If the statute of limitations began to run on January 9, 2012, and was not subsequently rescinded, it would have run until March 8, 2020 (2,981 days) when the first foreclosure moratorium began. The statute of limitations was then tolled from March 8, 2020 through December 31, 2021. The statute of limitations continued running on January 1, 2022 until June 20, 2023, when the first injunction was ordered in the present case (535 days). Thus, after applying tolling, only 3,516 days have run, and plaintiff's claim is premature. Therefore, defendants are entitled to summary judgment on this basis as well.

## CONCLUSION

Accordingly, plaintiff's Motion for Summary Judgment, ECF [43], is DENIED, and defendants' Motions for Summary Judgment, ECF [44] and [46], are GRANTED. This case is dismissed.

IT IS SO ORDERED.

DATED this 6th day of August, 2024.

Adrienne Nelson
United States District Judge